# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWEN R. LOPEZ, individually and on behalf of All Current and Former Employees of G.A.T. AIRLINE GROUND SUPPORT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> G.A.T. AIRLINE GROUND SUPPORT, INC., and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 09-CV-2268-IEG (BGS) <br><br> **ORDER:** <br><br> **(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. Nos. 21, 22);[1]** <br> **and** <br><br> **(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION (Doc. No. 23).** |

Presently before the Court are the Plaintiffs' Motion for Partial Summary Judgment (Doc. Nos. 21, 22) and Defendants' Motion for Summary Adjudication (Doc. No. 23). For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion, and GRANTS IN PART and DENIES IN PART Defendants' motion.

//

---

[1] Plaintiffs filed the Notice of Motion at Doc. No. 21, and the Memorandum of Points and Authorities and supporting documents at Doc. No. 22.

## BACKGROUND

Former employees of Defendant G.A.T. Airline Ground Support, Inc. ("GAT") bring this action for systematic wage and hour violations in violation of federal and state law. GAT is a corporation headquartered in Alabama, which provides services to airlines, including ground transportation, aircraft maintenance, and cargo operations management. The four named Plaintiffs – Edwen R. Lopez, Michael Jordan, John Forbes, and Ozell Clark (collectively, "Plaintiffs") - are former ramp agents employed by GAT in California.

On July 2, 2008, Plaintiff Lopez filed a putative class and representative action against GAT in state Superior Court, and on August 21, 2008, he filed a First Amended Complaint. On October 9, 2009, Plaintiff Lopez filed a Second Amended Complaint ("SAC") adding Plaintiffs Jordan, Forbes, and Clark, and adding additional causes of action. The SAC alleges fifteen causes of action for violation of the California Labor Code, the California Private Attorneys General Act, and the Fair Labor Standards Act ("FLSA"), as well as breach of contract. The SAC also added Defendants Jean Raines ("Raines") and James Baggett ("Baggett"), co-owners and board members of GAT. Plaintiffs bring this suit individually and on behalf of a proposed class of GAT employees in California.

Defendants GAT, Raines, and Baggett (collectively, "Defendants") removed the case to this Court. (Doc. No. 1.) On May 10, 2010, the parties filed the instant cross-motions for summary judgment, as well as evidentiary objections.[2] Plaintiffs move for summary judgment as to the first, fifth, sixth, ninth, and tenth causes of action, as well as the issue of GAT's failure to provide accurate itemized wage statements (at issue in Plaintiffs' first, third, fifth, seventh and eleventh causes of action). Plaintiffs also move for summary judgment on the fifteenth cause of action on the issue of whether Raines and Baggett are employers under the FLSA. Defendants move for summary judgment of the FLSA claim.

//
//

---

[2] The parties' evidentiary objections do not impact the substantive determination of the merits, and the Court denies these objections as moot.

- 2 -                                                                 09cv2268

## LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000). To withstand a motion for summary judgment, the nonmovant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The nonmoving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed R. Civ. P. 56(e); Celotex, 477 U.S. at 324.

The court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required "'to scour the record in search of a genuine issue of triable fact,'" Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the

documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### 1.   First Cause of Action for Failure to Record Meal Periods

Plaintiffs' first cause of action is for failure to record meal periods, in violation of California Industrial Welfare Commission Wage Order No. 9.[3]  Plaintiffs move for summary judgment on the issue of whether Defendants violated Wage Order No. 9 by failing to record the actual times its employees began and ended each meal period. Wage Order No. 9 provides:

> (A) Every employer shall keep accurate information with respect to each employee including the following:
>
> (3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. . . .[4]

It is undisputed that during the relevant time period GAT did not document the times employees began and ended each meal period.[5]  Rather, GAT had a system of automatically deducting time from employees' time cards to account for meal periods, unless the employee affirmatively notified GAT that a meal period was not taken.  Plaintiffs argue GAT's automatic deduction practice does not constitute an "accurate" recording of meal periods.

The Court is not persuaded that Wage Order No. 9 requires employers to record the actual times that employees begin and end each meal period.  Rather, the language of the regulation only appears to require employers to record that a meal break was taken.  Notably, Wage Order No. 9 expressly requires employers to record "when the employee *begins and ends each work period*," but does not specify that meal periods must also be recorded with that level of specificity.  Rather, the regulation requires that "[m]eal periods, split shift intervals and total daily hours worked *shall also be recorded*."

---

[3] Plaintiffs' first cause of action also alleges failure to provide meal breaks, as well as other violations related to meal periods.

[4] California Labor Code § 1173 authorizes the Industrial Welfare Commission to adopt rules, regulations, and policies regarding the wages, hours, and conditions of labor and employment in various occupations, trades, and industries.  Cal. Labor Code § 1173.

[5] As of 2008, GAT requires its employees to record the times they begin and end meal periods.

Here, Plaintiffs do not claim Defendants failed to record their meal periods or that Defendants recorded meal periods that were not actually taken. It is undisputed that employees may inform their supervisors of missed meal breaks so that the time is not deducted. Defendants also presented evidence that supervisors monitored employees to ensure meal breaks were actually taken.[6]

Accordingly, Plaintiff is not entitled to summary judgment as to the first cause of action.

### 2. Fifth Cause of Action for Failure to Pay Vested Vacation Pay

Plaintiffs' fifth cause of action is for failure to pay employees vested vacation pay upon termination, in violation of Labor Code § 227.3. Section 227.3 provides in relevant part:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; *provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.*

Cal. Labor Code § 227.3 (emphasis added). The California Supreme Court in Suastez v. Plastic Dress-Up Co., 31 Cal. 3d 774 (1982), addressed the issue of when vacation pay vests. In that case, the court held that because vacation pay is a "form of deferred compensation," a proportionate right to paid vacation pay vests *as it is earned*. Id. at 779. "Once vested, the right is protected from forfeiture by section 227.3." Id. at 784. "On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay." Id.

Plaintiffs contend GAT's vacation policy requires employees to forfeit vested vacation pay if they are not employed on the one-year anniversary of their start date, in violation of Section 22.7.3. GAT's Employment Handbook states:

> Upon completion of one year of continuous employment, hourly employees will receive 5 days of paid vacation. Employees will continue to receive 5 days of paid vacation annually on their Anniversary Date.

(Declaration of Allison Miceli in Supp. of Pl.'s Mot. for Summ. J. ("Miceli Decl."), Ex. M, Employment Handbook § 6.2.) It is undisputed that, under this policy, if an employee is

---

[6]Declaration of Brian Laliberte in Supp. of Defs.' Opp'n ¶ 5; Declaration of Kyle Wurtele in Supp. of Defs.' Opp'n ¶¶ 5-6; Declaration of Brendan Thlick in Supp. of Defs.' Opp'n ¶¶ 4-5; Declaration of Wayne Patterson in Supp. of Defs.' Opp'n ¶ 5.

terminated before their one-year anniversary date, vacation time is not cashed out to them on a pro rata basis. This policy is similar to the one in Suastez, which the California Supreme Court found unlawful. The policy in Suastez stated in relevant part: "VACATIONS: 1 week-First Year . . . Eligibility to be on the employee's anniversary date." Suastez, 31 Cal. 3d at 777 n.2. The Suastez court explained, "[i]f vacation pay 'vests' as it is earned, the company's requirement of employment on an anniversary date cannot prevent the right to pay from vesting." Id. at 781. Similarly, GAT's requirement of employment on the first-year anniversary date cannot prevent the right to vacation pay from vesting. Therefore, GAT employees who were terminated before their first-year anniversary were entitled to be paid a pro rata share of vacation pay upon termination.

Defendants contend GAT's vacation policy is lawful because employers may establish a "probationary period" or "waiting period" during which no vacation vests.[7] Defendants cite Owen v. Macy's, Inc., in which the California Court of Appeal held it was permissible for employers to institute a express written "waiting period" policy, which forewarns employees that no vacation is earned during the initial period of employment. 96 Cal. Rptr. 3d 70-76 (Ct. App. 2009). The court in Owen explained this is permissible because, on its face, Section 227.3 permits an employer to offer new employees no vacation time. Id.; see Cal. Labor Code § 227.3 ("[W]henever a contract of employment or employer policy provides for paid vacations . . . .").

However, GAT's policy is distinguishable from the one in Owen. The policy in Owen expressly stated that employees did not "earn and vest in paid vacation" for the first six months of employment.[8] Then, after the first six months, the employees in Owen received vacation days as an *advance* for the coming year, on the assumption that the employees would remain with the company during the coming year. Here, GAT's policy does not specify that no vacation is earned or vested during the first year, only that employees do not "receive" the five vacation days until their one-year anniversary. Also, unlike the policy in Owen, the vacation GAT employees receive

---

[7] Defendants also cite as persuasive authority the Policies and Interpretations Manual of the Division of Labor Standard Enforcement ("DLSE") and DLSE opinion letters, which state that Section 227.3 does not prohibit probation periods.

[8] The policy in Owen stated, "All eligible associates earn and vest in paid vacation after they have completed six months of continuous employment." 175 Cal. Rptr. 4th at 72. The policy further stated, "Beginning May 1, you accrue and vest in up to 50% of your annual vacation amount and on August 1, you accrue and vest in up to [the remaining] 50% of your annual vacation amount." Id.

on their first-year anniversary is not an "advance" for vacation earned during the second year of employment. Douglas Gray, a GAT payroll manager, testified employees receive five days of vacation after one year, and *then accrue vacation time on a pro-rata basis going into their second year of employment (and continuing onward)*. (Declaration of Douglas Gray in Supp. of Defs.'s Opp'n ("Gray Decl.") ¶¶ 4-6.)   Therefore, GAT's vacation policy requires employees to forfeit vested vacation pay in violation of Section 227.3.

Plaintiffs further argue GAT's vacation policy violates Section 227.3 because it contains an illegal "use it or lose it" policy, which requires employees to use vested vacation days within a year after receiving them, or the vacation is forfeited.   It is undisputed that the Employment Handbook provides, "Unused vacation days will not carry over into any subsequent years." (Def.'s Notice of Lodgment, Ex. B.)  However, Defendants presented evidence that this particular policy does not apply to GAT employees in California, and that these employees' unused vacation days carry over into subsequent years.  (Gray Decl. ¶ 5.)  GAT's policies and procedures are different with respect to its California branches due to California state law.  (Gray Decl. ¶ 5.) Defendants have raised a genuine issue of material fact as to whether GAT's "use it or lose it policy" applied to California employees.

However, at a minimum, Defendants violated Section 227.3, by failing to pay employees vested vacation pay for the first year of employment upon termination.  Accordingly, Plaintiffs are entitled to summary judgment on the fifth cause of action.

**3.    Sixth Cause of Action under PAGA for Failure to Pay Vested Vacation Pay**

Plaintiffs' sixth cause of action is for civil penalties under the California Private Attorneys General Act of 2004 ("PAGA"), California Labor Code §§ 2698 et seq, for violation of Labor Code § 227.3.  Plaintiffs move for summary judgment on the issue of liability.[9]

PAGA permits a civil action "by an aggrieved employee on behalf of himself or herself and other current or former employees" to recover civil penalties for violations of other provisions of the

---

[9]Plaintiffs do not presently seek an assessment of penalties. Therefore, the Court does not address Defendants' argument that any damages should be based on an "initial violation" basis, and not the "subsequent violation penalty."

Labor Code.[10] Cal. Labor Code § 2699(a). Recovery of civil penalties under PAGA requires proof of a Labor Code violation and compliance with the notice procedures set forth in Section 2699.3. Id. §§ 2699(a), 2699(i). Section 2699(f) of PAGA provides the following civil penalties for violation of those Labor Code provisions which do not specifically provide a penalty: $100 for each employee per pay period for the initial violation, and $200 for each subsequent violation. Id. § 2699(f). In addition, Section 2699(e) provides that whenever the Labor Code gives the Labor Commissioner discretion to assess a civil penalty, the courts have the same discretion.[11] Id. § 2699(e)(1).

Here, Plaintiffs have met the requirements necessary to pursue civil penalties under PAGA Plaintiff is an "aggrieved employee," which is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Id. § 2699(c). Plaintiffs base this PAGA claim on Defendants' failure to pay employees vested vacation, in violation of Labor Code § 227.3. As discussed in the previous section, Defendants have violated Section 227.3. Because Section 227.3 does not provide a penalty, Section 2699(f) penalties are available. Finally, it is undisputed that Plaintiffs have satisfied the notice procedures set forth in Section 2699.3 with respect to the Section 227.3 claim.[12] (Miceli Decl. Exs. A, B, C.)

Therefore, Plaintiffs are entitled to summary judgment as to the sixth cause of action on the issue of liability. Defendants are liable under PAGA for violation of Section 227.3.

//

---

[10] Section 2699(a) provides, "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." Cal. Labor Code § 2699(a).

[11] Section 2699(e)(1) states in relevant part, "whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty." Cal. Labor Code § 2699(e)(1).

[12] Section 2699.3 requires the employee to give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency. Cal. Labor Code § 2699.3(a). If the agency notifies the employee and the employer that it does not intend to investigate, or if the agency fails to respond within 33 days, the employee may then bring a civil action against the employer. Id. § 2699.3(a)(2)(A). If the agency decides to investigate, it then has 120 days to do so. If the agency decides not to issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may commence a civil action. Id. § 2699.3(a)(2)(B).

**4.     Issue of GAT's Failure to Furnish Accurate Itemized Wage Statements**

Plaintiffs move for summary judgment on the issue of whether GAT failed to provide accurate itemized wage statements, in violation of Labor Code § 226(a). GAT's failure to comply with this section is alleged in Plaintiffs' first, third, fifth, seventh and eleventh causes of action.[13]

Labor Code § 226(a) provides in relevant part that every employer shall furnish an "accurate itemized statement" showing the following information:

> (6) the inclusive dates of the period for which the employee is paid, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Cal. Labor Code § 226(a).

It is undisputed that GAT's paychecks do not indicate the applicable hourly rate of pay for the employee's regular rate, overtime rate, or double-time rate of pay. Plaintiffs' paychecks included only the total number of hours worked and the total amount paid. Therefore, Plaintiffs had to perform mathematical calculations to determine if their paychecks were accurate. Cicairos v. Summit Logistics, Inc., 35 Cal. Rptr. 3d 243, 247 (Ct. App. 2005) ("If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the total hours worked during the pay period, the requirements of section 226 would not be met."). The failure to provide this information violates Section 226(a).

It is also undisputed that GAT's wage statements indicate only the end date for each pay period, and do not list the beginning date. Defendants argue the pay period was sufficiently identified on the paychecks, because the paychecks provide the pay period when reviewed sequentially. However, the Labor Code requires each wage statement to provide "*the inclusive dates* of the period." See Cal. Labor Code. § 226(a).

Therefore, Plaintiff is entitled to summary judgment on the issue of whether Defendants furnished accurate itemized wage statements. Defendants violated Labor Code § 226(a) by failing to

---

[13] Plaintiffs' first cause of action is for "Failure to Provide Mandated Meal Periods," the fifth cause of action is for "Failure to Pay Vested Vacation Pay," the seventh cause of action is for "Failure to Reimburse for Business Expenses," and the eleventh cause of action is for "Failure to Pay Compensation Upon Separation of Employment." Under each of these causes of action, Plaintiffs allege numerous Labor Code and IWC Wage Order violations, including violation of Section 226. Defendants' procedural arguments with respect to this claim lack merit, as the SAC sufficiently states which Labor Code sections and IWC Wage Orders form the basis for the seventh and eleventh causes of action.

include the inclusive dates of the period for which employees were paid, the applicable hourly rates, and the corresponding number of hours worked at each hourly rate.

**5.  Issue of GAT's Violation of PAGA for Failure to Furnish Accurate Itemized Wage Statements**

Plaintiffs move for summary judgment on the issue of Defendants' liability under PAGA based on violation of Labor Code § 226(a).[14] Plaintiffs seek penalties under Section 2699(f) of PAGA, which provides civil penalties for violation of those Labor Code provisions which do not specifically provide a penalty.

Defendants raise the same arguments as in the previous section regarding the merits of the Section 226(a) claim. However, as the Court already determined, Defendants violated Section 226(a) by failing to provide accurate itemized wage statements. Because Section 226 does not provide a penalty, Section 2699(f) penalties are available. Finally, Plaintiffs have satisfied the notice requirements set forth in Section 2699.3 with respect to the Section 226(a). (Miceli Decl. Exs. A, B, C.)

Therefore, Plaintiffs are entitled to summary judgment on this issue. Defendants are liable under PAGA for violation of Section 226(a).

**6.  Ninth Cause of Action for Failure to Issue Proper Form of Payment**

Plaintiffs' ninth cause of action is for failure to issue proper form of payment, in violation of Labor Code § 212. Plaintiffs move for summary judgment on the issue of liability.

Section 212 provides in relevant part:

(a) No person, or agent or officer thereof, shall issue in payment of wages due, . . .:

(1) Any . . . check . . , unless it is negotiable and payable in cash, *on demand, without discount, at some established place of business in the state, the name and address of which must appear on the instrument. . . .*

Cal. Labor Code § 212(a)(1) (emphasis added). It is undisputed that GAT pays its employees with out-of-state checks drawn on First Community Bank, located in Mobile, Alabama. It is also undisputed that these checks do not state the name and address of a place of business in California

---

[14]In their motion for partial summary judgment, Plaintiffs state this claim was incorporated by reference as Exhibit A to their SAC. (Miceli Decl., Ex. A. (letter from Plaintiffs to the California Labor and Workforce Development Agency giving notice of PAGA claims).)

where employees can cash the checks on demand and without discount. The failure to do so constitutes a violation of Section 212. See Solis v. Regis Corp., 612 F. Supp. 2d 1085, 1086 (N.D. Cal. 2007) ("[D]efendants violated the statute by paying employees with checks that did not provide the name and address of a California business that would cash the checks on demand and without discount.").

Defendants do not dispute that Plaintiffs Jordan, Clark, and Forbes either had holds placed on their paychecks or were charged a fee at a check-cashing facility. However, Defendants presented evidence that other California employees were able to cash their checks without having holds placed on their checks or being charged fees. Regardless of whether there exists a place of business where Plaintiffs could have cashed the check on demand and without discount, Defendants violated Section 212 by failing to comply with the requirement that the name and address of such a business "*must appear on the instrument*." See Cal. Labor Code § 212(a)(1) (emphasis added). Finally, Defendants' arguments as to whether all the named Plaintiffs experienced holds or fees goes to the penalty to be imposed, not to liability. See Solis, 612 F. Supp. 2d at 1087 (explaining that regardless of whether a class member was injured, defendants violated the statute, because Labor Code section 22 defines "violation" as "a failure to comply with any requirement of the code.").

Therefore, Plaintiffs are entitled to summary judgment on the issue of liability for violation of Section 212.

**7.  Tenth Cause of Action under PAGA for Failure to Issue Proper Form of Payment**

Plaintiffs' tenth cause of action is for civil penalties under PAGA for failure to issue proper form of payment in violation of Section 212. As discussed in the previous section, Defendants violated Section 212. Plaintiff moves for summary judgment on the issue of Defendants' liability for Section 2699(f) civil penalties for any Section 212 violations which do not involve the withholding of wages.

Section 2699(f) of PAGA provides civil penalties for violation of those Labor Code provisions which do not specifically provide a penalty. California Labor Code § 225.5 provides a civil penalty where an employer "unlawfully withholds wages due any employee in violation of

Section 212." Cal. Labor Code § 225.5. Where an employee has to pay a fee to cash a check or a hold is placed on a check, the employer "unlawfully withholds wages due" within the meaning of § 225.5. Solis v. Regis Corporation, 612 F. Supp. 2d 1085, 1087 (N.D. Cal. 2007). Section 225.5, however, does not provide a penalty for violations of Section 212 that do not involve the withholding of wages. Where a check is made on an out-of-state bank, but the employee can cash the check without a fee or hold, no wages are withheld. Id. at 1088. Therefore, for violations of Section 212 where the employee can cash the check without a fee or hold, the civil penalties provided in Section 2699(f) apply.

Plaintiffs have satisfied the procedural requirements necessary to pursue civil penalties under PAGA. (Miceli Decl. Exs. A, B, C.) Therefore, Plaintiffs are entitled to summary judgment on this cause of action. Defendants are liable for civil penalties under PAGA for violation of Section 212, for any Section 212 violations which do not involve the withholding of wages.

**8.   Fifteenth Cause of Action on Issue of Whether Defendants Raines and Baggett are Employers under the FLSA**

The parties cross-move for summary judgment on the issue of whether Raines and Bagget are employers, as defined by FLSA § 203(d). For the reasons stated in the following section, the Court finds Raines and Baggett are not employers.

## DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION

Defendants move for summary judgment on Plaintiffs' fifteenth cause of action for failure to pay overtime compensation for all overtime hours worked, as well as other violations not relevant here, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

**1.   Statutory Exemption**

Defendants assert they are exempt from the overtime requirements of the FLSA under the exemption applicable to air carrier employees subject to the Railway Labor Act.[15] 29 U.S.C. § 213(b)(3). This defense was raised for the first time in Defendants' motion for summary adjudication.

---

[15] Section 213(b)(3) provides: "(b) Maximum hour requirement. The provisions of section 207 of this title shall not apply with respect to– (3) any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act [45 U.S.C.A. § 181 et seq.] . . . ." 29 U.S.C. § 213(b)(3).

Assertion of an exemption from the FLSA is an affirmative defense that must be specifically pleaded by the employer, or it is waived. See Rotondo v. City of Georgetown, S.C., 869 F. Supp. 369, 374 (D.S.C. 1994); Renfro v. City of Emporia, 741 F. Supp. 887, 888 (D.Kan.1990), *aff'd*, 948 F.2d 1529, 1539 (10th Cir.1991); see also Brennan v. Valley Towing Co., Inc., 515 F.2d 100, 104 (9th Cir. 1975) (FLSA exemption for "retail or service establishment" under § 213(a)(2) was not pleaded before motion for summary judgment, and was therefore waived). "[D]efendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." Magana v. Com. of the Northern Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997) (holding the district court erred in granting summary judgment for defendants without determining whether their delay in raising the FLSA exemption for employees "employed in a bona fide executive, administrative, or professional capacity" prejudiced the plaintiff).

The Court finds Defendants waived their FLSA defense by failing to raise it in a timely manner, and that the delay caused prejudice to Plaintiffs. Although Plaintiffs added the FLSA claim on October 9, 2009, Defendants did not seek leave to amend their Answer to add this defense, and raised the defense for the first time in their motion for summary adjudication. Defendants' general denial of liability under the FLSA in the Answer was insufficient to put Plaintiffs on notice of this particular defense. Plaintiffs did not have notice of this defense until after the parties had already taken depositions and produced requested documents, and Plaintiffs were prejudiced by their inability to conduct discovery on this issue

Therefore, Defendants' defense that they are exempt from the overtime requirements of the FLSA under 29 U.S.C. § 213(b)(3) is waived.

**2.    Coverage Under the FLSA**

Defendants' move for summary judgment on the issue of whether Raines and Baggett are employers as defined by FLSA § 203(d). Raines and Baggett are co-owners and board members of GAT, and Raines is the Chief Executive Officer.

Unless an exemption applies, the FLSA applies to "employers," defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29

U.S.C. § 203(d). The definition of "employer" under the FLSA is not limited by the common law concept of "employer," but "'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" Boucher v. Shaw, 572 F.3d 1087, 1090-91 (9th Cir. 2009). In the Ninth Circuit, "[w]here an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Id. at 1090-91 (internal citations omitted). This determination does not depend on "isolated factors but rather upon the circumstances of the whole activity." Id. The touchstone is the "economic reality" of the relationship. Id.

In considering the economic reality of the relationship, courts look to whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Hale v. State of Ariz., 993 F.2d 1387, 1394 (9th Cir. 1993). However, no one factor is dispositive. Evaluation of the relationship as a whole depends on the "totality of the circumstances." Id.

Here, the Court finds Raines and Baggett are not "employers" personally liable for GAT's compensation decisions. Notably, it is undisputed that they had no involvement in supervising the GAT employees in California or in controlling their work schedules or conditions of employment. Although Raines and Baggett signed employees' paychecks, it is undisputed they had no involvement in determining rates and method of payment, or in any compensation decisions. Raines and Baggett hired and fired upper level management, but never exercised their authority to hire or fire California employees. In addition, there is no evidence Raines and Baggett were involved in maintaining employment records.

In cases where courts have found corporate officers and board members liable as employers, the individuals had at least some degree of involvement in supervising employees, controlling work schedules, and setting wages. See Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (company president had ultimate control over day-to-day operations and was in charge of setting employee wages and schedules); Herman v. RSR Security Servs. Ltd., 172 F.3d 132, 141

(2d Cir. 1999) (corporate officer and board member made financial decisions, hired managerial staff, signed checks, frequently gave employees instructions on conducting company business, and supervised and controlled employee work schedules); De Guzman v. Parc Temple LLC, 537 F. Supp. 2d 1087, 1094 (C.D. Cal. 2008) (company president owned 70% of residential care facility, hired the plaintiff, set his work schedule, determined rate and method of pay, and signed paychecks). In this case, Raines and Baggett had no involvement in supervising employees, controlling work schedules, or setting wages.

Plaintiffs' main argument is that Raines and Baggett are employers because they controlled the company financially. Raines and Baggett own GAT, own several business entities essential to GAT's business, sign financial documents, personally guarantee loans and sign lease agreements, and are responsible for ensuring GAT has adequate funds in the corporate bank account. However, to be held liable as employers, they must have had operational control of "significant aspects of the corporation's day-to-day functions." See Lambert v. Ackerly, 180 F.3d 997, 1001-02, 1012 (9th Cir. 1999); see also Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 966 (6th Cir. 1991); Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983). The evidence shows Raines and Baggett had limited involvement in the day-to-day functions of GAT's business. Rather, the evidence demonstrates President Richard Thiel and Vice President Sherrie Dian Lensch were primarily responsible for daily operations. Their communications with Raines and Baggett concerned long-term topics such as GAT's goals and objectives for the fiscal year, and how to obtain and maintain customer contracts.

Therefore, Defendants are entitled to summary judgment as to this issue. Raines and Baggett are not employers under the FLSA.

## CONCLUSION

Accordingly, the Court ORDERS as follows.

1. Plaintiffs' motion for summary judgment is GRANTED IN PART. Plaintiffs are entitled to summary judgment on the following claims and issues:

    a. Fifth cause of action for failure to pay vested vacation pay (violation of Labor Code § 227.3)

    b.    Sixth cause of action under PAGA for failure to pay vested vacation pay

    c.    Issue of GAT's failure to furnish accurate itemized wage statements (violation of Labor Code § 226)

    d.    Issue of GAT's violation of PAGA for failure to furnish accurate itemized wage statement

    e.    Ninth cause of action for failure to issue proper form of payment (violation of Labor Code § 212)

    f.    Tenth cause of action under PAGA for failure to issue proper form of payment

2.    Plaintiffs' motion for summary judgment is DENIED as to the following claims and issues:

    a.    First cause of action for failure to record meal periods

    b.    Issue whether Raines and Baggett are employers under the FLSA.

3.    Defendants' motion for summary judgment is GRANTED as to the issue of whether Raines and Baggett are employers under the FLSA.

4.    Defendants' motion for summary judgment is DENIED as to their defense they are statutorily exempt from the overtime requirements of the FLSA.

**IT IS SO ORDERED.**

**DATED: July 19, 2010**

                                      */s/ Irma E. Gonzalez*

                                 **IRMA E. GONZALEZ, Chief Judge**
                                 **United States District Court**