# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWEN R. LOPEZ, individually and on behalf of All Current and Former Employees of G.A.T. Airline Ground Support, Inc., <br><br> Plaintiffs, <br> vs. <br><br> G.A.T. AIRLINE GROUND SUPPORT, INC.; JEAN RAINES; and JAMES BAGGETT, <br><br> Defendants. | CASE NO. 09cv2268-IEG(BGS) <br><br> Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification [Doc. 41]; Granting in Part and Denying in Part Plaintiffs' Motion for Collective Action Certification [Doc. 48] |

Plaintiffs Edwen Lopez, Michael Jordan, John Forbes, and Ozell Clark move the Court for certification of a class under Fed. R. Civ. P. 23 and also for certification of a collective action pursuant to 29 U.S.C. § 216(b). Defendant filed an opposition as to each motion, and Plaintiffs filed a reply. Oral argument was heard on Plaintiffs' motions before Chief Judge Irma E. Gonzalez on Tuesday, September 3, 2010.

Upon consideration of the parties' arguments, for the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART both of Plaintiffs' motions.

## *Background*

Former employees of Defendant G.A.T. Airline Ground Support, Inc. ("GAT") bring this action for systematic wage and hour violations in violation of federal and state law. GAT is a

1  corporation headquartered in Alabama, which provides services to airlines, including ground
2  transportation, aircraft maintenance, and cargo operations management. The four named Plaintiffs
3  are former ramp agents employed by GAT in California. Plaintiff Lopez was employed as a ramp
4  agent in San Diego. Plaintiff Jordan was employed as a ramp agent in Orange County. Plaintiff
5  Forbes was employed as a ramp agent in Burbank. Plaintiff Clark was employed as a ramp agent
6  in Sacramento.

7  On July 2, 2008, Plaintiff Lopez filed a putative class and representative action against
8  GAT in state Superior Court, and on August 21, 2008, he filed a First Amended Complaint. On
9  October 9, 2009, Plaintiff Lopez filed a Second Amended Complaint ("SAC") adding Plaintiffs
10 Jordan, Forbes, and Clark, and adding additional causes of action. The SAC alleges fifteen causes
11 of action for violation of the California Labor Code, the California Private Attorneys General Act,
12 and the Fair Labor Standards Act ("FLSA"), as well as breach of contract. The SAC also added
13 Defendants Jean Raines ("Raines") and James Baggett ("Baggett"), co-owners and board members
14 of GAT.  Plaintiffs bring this suit individually and on behalf of a proposed class of GAT
15 employees in California.

16 Defendants GAT, Raines, and Baggett (collectively, "Defendants") removed the case to
17 this Court. [Doc. No. 1.]  The parties filed cross-motions for summary judgment, and the Court
18 granted in part and denied those motions by order filed July 19, 2010. [Doc. No. 38]. The Court
19 granted Plaintiffs motion for summary judgment on the following claims and issues:

20     a. Plaintiffs' fifth cause of action for failure to pay vested vacation pay in violation of
21 Labor Code § 227.3 (the Court found Defendants' policy, requiring employees to forfeit vested vacation pay if they were employed for less than a year prior to their termination, violated § 227.3);

22     b. Plaintiffs' sixth cause of action for civil penalties under the California Private
23 Attorneys General Act of 2004 ("PAGA"), California Labor Code §§ 2698 *et seq.*, for violating Labor Code § 227.3;

24     c. Plaintiffs' first, third, fifth, seventh, and eleventh causes of action insofar as each of
25 these causes of action allege Defendants failed to furnish accurate itemized wage statements in violation of Labor Code § 226(a) (the Court found GAT's paychecks
26 did not indicate the applicable hourly rate of pay for the employee's regular, overtime, or double-time rate of pay and also failed to indicate the beginning date
27 of the pay period);

28     d. Plaintiffs' claim for civil penalties under PAGA based upon Defendants' violation of Labor Code § 226(a);

  e. Plaintiffs' ninth cause of action for failure to issue proper form of payment in violation of Labor Code § 212 (the Court found GAT paid its employees with out-of-state checks which did not state the name and address of a place of business in California where employees could cash the checks on demand without discount); and

  f. Plaintiffs' tenth cause of action for civil penalties under PAGA based upon Defendants' violation of Labor Code § 212 insofar as employees were able to cash checks without a fee or hold.

The Court denied Plaintiffs' motion for summary judgment as to Plaintiffs' first cause of action for failure to record meal periods, finding Plaintiffs had not provided any evidence that Defendants failed to record their meal periods or that Defendants recorded meal periods that were not actually taken. The Court also granted Defendants' motion for summary judgment, finding the individual defendants Raines and Baggett were not employers under the FLSA.

  Plaintiffs now move for class certification under Rule 23 and also for collective action certification pursuant to the FLSA.

### *Legal Standards*

  Rule 23 of the Federal Rules of Civil Procedure governs the certification of a class in federal court. As a threshold matter, the court may certify a class only if plaintiffs meet the requirements of Rule 23(a):

  (1) the class is so numerous that joinder of all members is impracticable;

  (2) there are questions of law or fact common to the class;

  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

  In addition, the plaintiff must demonstrate one of the three conditions set forth in Rule 23(b) is met. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires a finding "that the question of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering whether certification is appropriate under Rule 23(b)(3), the court should consider:

  (A) the class members' interests in individually controlling the prosecution or defense

1                     of separate actions;

2     (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

3     (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

5     (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

When conducting a Rule 23 inquiry, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). The district court has wide discretion in determining whether an action is appropriate for class treatment. Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 594 (9th Cir. 2010) (*en banc*). In performing its evaluation of whether plaintiffs have shown the four requirements of Rule 23(a), the court may analyze the merits of a claim only insofar as necessary to determine whether the requirements of that Rule have been met. Id. Under Rule 23(b)(3), however, the court must "formulate 'some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case'." Id. at 593 (quoting In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 20 (1st Cir. 2008)).

In addition to Rule 23, the court may certify a collective action under § 16 of the FLSA for workers who are "similarly situated." 29 U.S.C. § 216(b). That statute does not define "similarly situated" or provide any guidance for when a collective action is appropriate. Courts, however, generally utilize a two-step approach involving an initial notice to prospective plaintiffs followed by a final evaluation of whether such plaintiffs are similarly situated. Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004). At the final stage, the court considers the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Id.

### *Motion for Class Certification*

Plaintiffs seek certification under Rule 23 on behalf of the following classes:

> All current and former employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, Burbank International Airport and Sacramento International Airport in California for the period July 2, 2004 to the present ("Vacation/Uniform/Paycheck/Wages/ Breach of Contract Class").

The Vacation/Uniform/Paycheck/Wages/Breach of Contract Class applies to the fifth, seventh, ninth, eleventh, thirteenth, and fourteenth causes of action. Plaintiffs propose treating this as a single class, but acknowledge not all class members will have claims under each cause of action. See Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361 (C.D. Cal. 2009) (certifying single class of all local and regional drivers, although complaint alleged a variety of Labor Code violations including failure to pay minimum or agreed rates, failure to provide proper meal and rest periods, failure to furnish accurate itemized wage statements, and failure to pay all wages due at time of termination).

>   Plaintiffs also seek to certify the following two sub-classes:
>
> All current and former employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, and Sacramento International Airport in California for the period July 2, 2004 to the present ("Off-The-Clock Class").
>
> All current and former employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, and Sacramento International Airport in California for the period July 2, 2004 to the present ("Meal Period Class").

The Off-the-Clock Class applies to the third, eleventh, and thirteenth causes of action, and does not include employees from the Burbank International Airport. The Meal Period Class applies to the first, eleventh, and thirteenth causes of action and also does not include employees from the Burbank International Airport. Plaintiffs' proposed "Meal Period Class" would include only ramp agents employed at the three airports, while the "Vacation/Uniform/Paycheck/Wages/ Breach of Contract Class" and the "Off -the-Clock Class" would include all employees including skycaps. All classes include only non-exempt employees.

  Plaintiffs request the Court appoint Plaintiffs as class representatives and Grace Hollis LLP as class counsel.

*1.*   *Numerosity*

  There are 1,367 current and former employees who were employed by GAT in California

1 during the proposed class period, 1,185 of whom were ramp agents. GAT does not dispute the
2 numerosity requirement is met.

### 2. *Commonality*

Rule 23(a)(2) requires there be "questions of law or fact common to the class." This requirement is to be construed permissively. "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998); see also Dukes, 603 F.3d at 600 (district court properly found plaintiffs satisfied Rule 23(a)(2) requirement where they presented anecdotal and expert statistical evidence of class-wide gender disparities attributable to discrimination).

Here, as explained in detail below, Plaintiffs present both factual evidence of GAT's company-wide policies and practices as well as anecdotal evidence in the form of class member declarations regarding the application of those challenged policies and practices. With regard to the "Vacation/Uniform/ Paycheck/Wages/ Breach of Contract Class," Plaintiffs have demonstrated that each of GAT's current and former employees were subject to the same company-wide policies during the class period, thus satisfying Rule 23(a)(2)'s commonality requirement. Although it is a little bit closer call, Plaintiffs have also demonstrated common issues of fact and law with regard to the "Off the Clock" and "Meal Period" subclasses. To the extent there are divergent factual issues with regard to the claims presented under each of these classes and subclasses, those variations go more to the typicality requirement under Rule 23(a)(3) and the predominance inquiry under Rule 23(b)(3).

### a. Vacation

The Court previously determined that GAT's policy of failing to disburse vested vacation pay to those employees whose employment was terminated within the first year violates Labor Code § 227.3. Defendants argue there are factual issues as to which employees were subject to the policy. However, variation among individual claims does not defeat a finding of commonality under Rule 23(a)(2) so long as there are common factual or legal questions. Dukes, 603 F.3d at

612; <u>Local Joint Executive Bd. v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001) (variation among claims of individual employees regarding whether they worked on holiday did not defeat finding of commonality). The variation in individual claims raised by Defendants goes to damages and ultimately to the question of whether the common issues predominate in the Rule 23(b)(3) inquiry. Those variations do not defeat a finding there are common issues of fact or law under Rule 23(a)(2) with regard to disbursement of vested vacation pay.

     b. Uniforms

With regard to the issue of uniforms, common issues of fact and law include (a) whether all employees are subject to the company's Return of Property Policy, (b) whether all employees sign a form entitled Authorization to Make Deductions from Wages, (c) whether GAT legally deducts money from all employees' wages as a deposit on company property under Labor Code § 2802, (d) whether a $200 deposit deducted from all employees' paychecks at a rate of $10 per pay period is reasonable, (e) whether GAT fails to refund the deposits deducted from all employees' paychecks, and (f) whether GAT's practice complies with its obligation to provide accurate itemized wage statements.

Defendants argue employees had different types of uniforms, returned a different number of uniforms, were charged different amounts as deposits, and were refunded different amounts upon their termination. Nonetheless, there is an overriding common question of law as to whether GAT's policy of deducting deposits from employee paychecks was lawful, and overriding common questions of fact as to whether GAT deducted and/or failed to refund money from employees' wages.

     c. Paychecks

The Court has already determined that GAT's paychecks, which were drawn on an out-of-state bank but failed to state the name and address of a place of business in California where employees could cash the checks on demand without discount, violated Labor Code § 212. Defendants argue some employees did not experience delays or difficulties in cashing checks and did not incur any fees. Again, however, those variation in individual claims do not defeat Plaintiffs' showing of commonality.

#### d. Wages

Plaintiffs' wages claim is based upon GAT's alleged failure to pay vested vacation benefits upon termination and GAT's alleged failure to refund uniform deposits. Although there are a number of variations in individual employees' claims, the underlying policies are the same for all employees, and present common questions of both law and fact. These common issues include whether GAT's failure to pay vested and accrued vacation benefits and the mailing of deposit refund checks resulted in inaccurate itemized wage statements.

#### e. Breach of Contract

Plaintiffs' breach of contract claims is premised upon the same legal arguments set forth individually above – GAT's alleged failure to pay vacation benefits, deduction of uniform deposits, and failure to refund those deposits. Plaintiffs argue GAT's failure to follow policies set forth in the Employee Handbook constituted a breach of the employment agreement. There are thus common issues of fact and law regarding whether GAT's employment policies and practices resulted in a breach of the employment contract, because it appears all proposed class members were given Employee Handbooks and subject to the policies therein.

#### f. Off-the-Clock Subclass

Plaintiffs allege GAT has a company-wide policy and practice of requiring its employees to park far from the airport, and then requiring them to wait for and ride the employee shuttle bus. Plaintiffs allege GAT's failure to pay employees for their waiting and traveling times violates Wage Order 9. This claim applies only to GAT employees at San Diego, Orange County, and Sacramento Airports, and not to those employed at the Burbank Airport.

Defendants argue in opposition that there is a factual disparity as to each of the three airports regarding the location of employee parking lots vis-a-vis the work station, whether employees are required to park in those lots and take shuttles to work, and the amount of time employees spend waiting for and riding the shuttles. However, as to each airport, both the location of the parking lots and the local policy regarding taking the shuttle can be determined as a matter of fact common to all employees. Based thereon, the Court can determine as common issues of fact whether the employees were required to ride the shuttle and prohibited from taking other

1 forms of transportation. The legal issue of whether GAT should compensate employees for this
2 commuting time is common to all class members. Therefore, although there may be individual
3 variations between airports, there are common issues of fact and law under Rule 23(a)(2).

        g. Meal Period Subclass

5 Although it is closer than any of the other claims, Plaintiffs also satisfy the commonality
6 prong with regard to their proposed Meal Period subclass. GAT's Employee Handbook states
7 "[a]ll full-time employees are provided with one meal period each workday." Plaintiffs argue this
8 policy on its face violates the Labor Code because it only permits one meal period regardless of
9 the time worked by an employee. In addition, Plaintiffs allege GAT has a company-wide policy
10 and practice of interrupting employee meal periods and failing to pay for noncompliant meal
11 periods. Finally, Plaintiffs allege GAT has a company-wide practice of automatically deducting
12 time from its ramp agents' timecards to make it appear as though they received compliant meal
13 periods regardless of whether they actually received the uninterrupted meal period. Plaintiffs have
14 submitted numerous declarations in support of its motion from class members regarding GAT's
15 practices and policies in this regard.

16 As Defendants point out in opposition, different work schedules, flight schedules, and
17 overall operation of each GAT location in California leads to diverse factual issues in resolving
18 Plaintiffs' meal period claims. Meal periods are typically taken during the "lag time" between
19 outgoing and incoming flights by the various airlines at the San Diego, Orange County, and
20 Sacramento Airports. In addition, work schedules are based upon the airport flight schedules, such
21 that employee schedules, including the scheduling of break times, vary widely according to
22 location. Nonetheless, the commonality requirement of Rule 23(a)(2) is to be construed
23 permissively, so long as there is a common core of either legal issues or salient facts. Blackwell v.
24 SkyWest Airlines, Inc., 245 F.R.D. 453, 460 (S.D. Cal. 2007) (noting commonality is not a "high
25 bar" such that shared issue of whether employees were compensated for missed meal periods
26 satisfied requirement despite divergent factual basis for non-payment of individual employees).
27 Here, the common legal issue is whether GAT had an overriding policy prohibiting its employees
28 from taking a full uninterrupted meal period.

*3.*     *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement of Rule 23(a)(3) is very similar to the permissive standard for showing commonality – "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Here, Defendants argue the named Plaintiffs have failed to show their claims are typical of those of the class. For example, with regard to Plaintiffs' vacation pay claim, Plaintiffs Ozell Clark and Michael Jordan both worked more than one year and therefore do not have the same recovery interests as employees whose employment terminated within the first year. With regard to Plaintiffs' uniform claims, Plaintiff Lopez did not personally return his uniforms after he was terminated, Plaintiff Jordan only paid a $50 deposit and signed a document attesting the deposit was fully refunded, Plaintiff Forbes only deposited $80 toward his uniform and admits he received a full refund, and Plaintiff Clark received a refund of at least a portion of his $200. With regard to the paycheck claims, Plaintiff Forbes did not have a bank account and therefore had no option but to use a check-cashing facility, causing him to incur fees. With regard to the Off-The-Clock subclass, Plaintiff Jordan worked for half his employment with GAT as a cargo agent/ supervisor and therefore was able to park near the cargo warehouse; Plaintiff Clark also had the ability to park at a County of Sacramento parking lot because he also worked for the County.

Notwithstanding these variations in the named Plaintiffs' claims, the Court finds Plaintiffs' claims are sufficiently representative of the proposed class members. Even though individual employees may not have suffered identical harm, each of the Plaintiffs' claims stem from the same allegedly unlawful policies and practices. The vacation pay claims stem from GAT's policy of not paying employees vested vacation benefits. The uniform claims stem from GAT's alleged policy of deducting deposits from employee paychecks and failing to fully refund those deposits. The paycheck claims stem from GAT's failure to indicate on the face of the check where it can be cashed. The off-the-clock claims stem from GAT's alleged policy requiring employees to park far away and take a shuttle to the work site. The meals claims stem from GAT's policies with regard

to setting schedules and breaks. Although not all the named Plaintiffs can assert all of the claims, their claims are collectively typical of the class members as a whole. Therefore, Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3).

### 4. *Adequacy of Representation*

Rule 23(b)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." Hanlon, 150 F.3d at 1020. Defendants do not challenge the Grace Hollis law firm's qualifications or competency. Therefore, the only question is whether the proposed class representatives have conflicts of interest with the proposed class.

Notwithstanding individual variations in the claims assertable by the named Plaintiffs, they collectively represent the interests of all of the proposed class members. Although none of the named Plaintiffs are skycaps, the claims which skycaps may assert are based upon the same policies underlying the other putative class members' claims. Defendants' argument, that the named Plaintiffs' interests must be co-extensive with those of the entire class, is contrary to law. Dukes, 603 F.3d at 614 (district court did not err in finding named plaintiffs, some of whom were in-store managers and decision-making agents, to be adequate representatives of less senior employees with regard to claims of gender discrimination). Each of the named Plaintiffs has expressly indicated he is committed to vigorously prosecuting this case on behalf of the class, and has participated in discovery and mediation. Therefore, Plaintiffs are adequate representatives of the class.

### 5. *Predominance of common questions*

Although Plaintiffs satisfy the requirements of Rule 23(a)(1) - (4) with regard to their proposed class and subclasses, the court has concerns about whether the common questions of law and fact will predominate over questions regarding individual claims, at least as to several of the Plaintiffs' claims. Rule 23(b)(3) requires Plaintiffs to show that common issues of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The

predominance inquiry of Rule 23(b)(3) asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation'." In re Wells Fargo Home Mortgage Overtime Pay Litigation, 571 F.3d 953, 956 (9th Cir. 2009) (quoting Local Joint Executive Board, 244 F.3d at 1162).

Defendants argue that Plaintiffs' proposed "Vacation/Uniform/Paycheck/Wages/Breach of Contract" Class requires individual inquiries of fact and the application of five different areas of law, such that the proposed class fails the predominance inquiry under Rule 23(b)(3). As explained below, however, each of the claims asserted by this proposed class are based upon company policies which were consistently applied to all of GAT's employees at the four designated airports. Although individual inquiries would be necessary to determine whether the class members were damaged by the policies, the Court believes most of these individual inquiries are manageable in light of the size of the class.

a. Vacation claim

Plaintiffs challenge GAT's policy of denying accrued and vested vacation benefits to those employees who leave the company before their one year anniversary. The Court has already found that the policy required employees to forfeit vested vacation pay in violation of Labor Code § 227.3. The fact some of the proposed class members (and named Plaintiffs) were employed more than one year does not defeat Plaintiffs desire to have this claim adjudicated through a proceeding under Rule 23. It can easily be ascertained from GAT's records which employees were employed less than a year, and the amount of unpaid vested vacation benefits which were unpaid. Where, as here, the claim asserted by a proposed class is based upon a consistent employer practice, class certification is usually appropriate. Kamar v. Radio Shack Corp., 254 F.R.D. 387, 398 (C.D. Cal. 2008).

b. Uniforms claim

Although Plaintiffs' uniform deposit/refund claim presents more questions of individual fact than their unpaid vacation benefits claim, it also stems from a consistently applied company-wide policy. The Court can determine whether GAT's policy of requiring its employees to pay a deposit for company property, and deducting that deposit from employee paychecks, violates

Labor Code § 2802. Although there are individual variations in how many uniforms employees received, how much of a deposit was deducted from their paychecks, and when and how much of the deposit was returned, those individual factual inquiries do not preclude class treatment of this claim. <u>Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th Cir. 2001) (although individual damages calculations would be required if class plaintiffs prevailed on their claim that they were given insufficient advance notice of closure, common issues predominated and justified class treatment because damages calculations would involve straightforward calculation).

### c.  Paycheck claim

Plaintiffs' paycheck claim also stems from a consistently applied company-wide policy of issuing payroll checks to California employees from an out-of-state bank, without indicating on the face of the check where it could be cashed on demand and without discount. The Court has already determined this practice violated Labor Code § 212, regardless of whether any individual plaintiff suffered actual injury. If a putative class member incurred a fee or delay in cashing the check, that plaintiff may be entitled to damages. However, those individual issues do not predominate over the common issue of law regarding whether GAT's consistently applied policy was unlawful.

### d.  Wages claim

Plantiffs' claim that GAT failed to pay its employees all wages due within the required time upon separation of employment arises out of the same nucleus of facts as its Vacation claim and Uniform claim. Plaintiffs allege GAT's practice of not paying vested vacation time to those employees who separated from employment before their one-year anniversary, and GAT's practice of mailing deposit checks to separated employees, both result in wages not being paid when due. Both of these claims are predicated on common legal issues. Although there are individual factual issues regarding when a particular employee separated from employment or when a particular deposit refund check was mailed, these issues do not preclude class treatment of the claims.

### e.  Breach of contract claim

Plaintiffs' breach of contract claim is based upon the premise that certain policies and

1  procedures set forth in GAT's Employment Handbook, such as the scheduling of meal periods and
2  that vested vacation benefits are not distributed to employees who separate within their first year,
3  fail to comply with California labor laws. To the extent these underlying vacation and meal period
4  claims are appropriate for class treatment, Plaintiffs' breach of contract claim is also appropriate
5  for class treatment.

6        f.  Off-the-Clock Subclass

7  Common issues of fact and law also predominate over individual questions with regard to
8  Plaintiffs' Off-the-Clock claim. As to each of the three airports subject to this claim, Plaintiffs
9  allege GAT has designated employee parking lots far from the work area and requires employees
10  to park in those lots and take a shuttle bus to the site. Plaintiffs have submitted dozens of
11  declarations outlining the location of the parking lots, and the time it took to wait for and travel to
12  the work site on the employee shuttle. Based upon GAT's alleged policy of requiring employees
13  to use these shuttles, there is a common question of law as to whether GAT is required to
14  compensate its employees for that travel time.

15  Although Defendants argue there are individual inquiries regarding whether employees
16  could have utilized other methods of transportation or were required to park in the employee lots
17  and travel to the site on the employee shuttle, these inquiries go directly to the common legal
18  question of whether GAT should have compensated employees for their travel time.

19        g.  Meal Period Subclass

20  The one category of claims which the Court finds is inappropriate for class treatment is the
21  meal period claims. Plaintiffs allege GAT violated Labor Code §§ 512(a) and § 226.7(a), which
22  require an employer to "provide" employees with a meal break. The Labor Code does not define
23  "provide" and the California Supreme Court has not ruled upon whether an employer has an
24  affirmative obligation to ensure its employee takes a meal break, or merely need make breaks
25  available. In the absence of such authority from the California Supreme Court, this Court "is *Erie*-
26  bound to apply the law as it believes that court would [apply it] under the circumstances." White
27  v. Starbucks Corp., 497 F. Supp. 2d 1080, 1088 (N.D. Cal. 2007).

28  District courts in California have uniformly held that the word "provide" in the Labor Code

is properly interpreted as "make available" rather than "ensure taken." <u>Salazar v. Avis Budget Group, Inc.</u>, 251 F.R.D. 529, 532 (S.D. Cal. 2008); <u>see also</u> <u>White</u>, 497 F. Supp. at 1089 (concluding that California Supreme Court, if faced with the issue, "would require only that an employer *offer* meal breaks, without forcing employers actively to ensure that workers are taking these breaks" such that "employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take them regardless of the reason."); <u>Brown v. Federal Express Corp.</u>, 249 F.R.D. 580, 586 (C.D. Cal. 2008) (same); <u>Kenny v. Supercuts, Inc.</u>, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (same). Because plaintiffs alleging a violation of Labor Code § 226.7 must demonstrate that they were forced to forego meal breaks, a showing which requires an inquiry into the individual facts and circumstances under which those breaks were missed, district courts in California have uniformly found such claims inappropriate for class-wide adjudication. <u>Salazar</u>, 251 F.R.D. at 534; <u>Brown</u>, 249 F.R.D. at 285-86; <u>Kenny</u>, 252 F.R.D. at 646.

The California Court of Appeal earlier this year called into doubt the California district courts' interpretation of the term "provide". <u>Jaimez v. DAIOHS USA, Inc.</u>, 181 Cal. App. 4th 1286, 1304 (2010) (calling into question the decisions in <u>Brown</u> and <u>White</u> and certifying class of employees claiming they were uniformly denied uninterrupted meal and/or rest breaks). The California Supreme Court has granted review in two cases bearing on this issue. <u>Brinker Restaurant Corp. v. Superior Court</u>, 165 Cal. App. 4th 25 (2008) (review granted on Oct. 22, 2008) (holding that employers "need only provide [meal breaks] and not ensure they are taken"); <u>Brinkley v. Public Storage, Inc.</u>, 167 Cal. App. 4th 1278 (2008) (review granted on January 14, 2009) (holding that "California law does not require an employer to ensure that employees take rest periods. An employer need only make rest periods available."). At this point, however, there is no reason to believe the California Supreme Court will reverse course and impose a new obligation upon employers to ensure that employees take designated meal periods.

Plaintiffs argue the facts of this case are distinguishable from <u>Salazar</u>, <u>White</u>, and <u>Brown</u> because although GAT's Employee Handbook provided for a one hour meal period, the company-wide policy and practice applied to ramp agents was to deny them an uninterrupted meal period. This is exactly the type of policy and practice for which district courts have routinely denied class-

wide treatment. <u>Kenny</u>, 252 F.R.D. at 642 (although on paper the defendant provided a proper meal period, plaintiffs claimed defendants "have a on going practice of not providing meal breaks"); <u>Salazar</u>, 251 F.R.D. at 534 (although company policy provided for a full 30-minute meal break, plaintiffs claimed they were often precluded from taking the allotted time); <u>Brown</u>, 249 F.R.D. at 586 (where company policy provided for meal breaks, FedEx drivers were required to make an individualized showing that they were forced to forego a break). Unlike the Plaintiffs in <u>Brown</u>, all of the proposed class members in this case worked in the same job as ramp agents. However, the Plaintiffs worked at three different airports, which serviced different airlines (each having their own requirements for when ramp agents were required to be on the tar mac), under the supervision of numerous general managers who were not obligated to schedule meal periods under any uniform practice. The Court concludes individual inquiries would predominate over the common issues of fact and law with regard to Plaintiffs' proposed Meal Period Subclass, making class treatment inappropriate. Therefore, the Court DENIES Plaintiffs' request to certify that subclass.

6. <u>Superiority of Class-wide Treatment of Claims</u>

As to all of Plaintiffs' claims with the exception of meal periods, Plaintiffs have established class treatment is superior to other methods of adjudicating the controversy as required by Rule 23(b)(3). Contrary to Defendants' argument in its opposition, the Court would not be required to hold mini trials as to each of the individual class plaintiffs. As explained with regard to the commonality, typicality, and predominance analysis above, most of Plaintiffs' claims involve GAT's policies and practices applicable to all ramp agents. In addition, most of Plaintiffs' damages can be readily ascertained from GAT's company records if the factfinder determines GAT's policies were unlawful.

The damages suffered by each of the class members would not be sizeably different from each other, such that no class member has a significant interest in controlling the litigation. In addition, the total potential damages of each class member is relatively modest. Therefore, it is not likely putative class members would pursue their claims individually. Although the Plaintiffs assert a variety of claims under the California Labor Code, the class members can be easily

identified, and their damages can be readily calculated. Thus, class treatment of these claims is manageable.

The Court is concerned about whether a class notice can coherently explain the various claims and options available to putative class members. However, these concerns can be addressed at the time a notice is drafted. In addition, if necessary, the Court can bifurcate liability from damages for purposes of trial. Plaintiffs are aware of no other pending litigation between any class member and GAT regarding these matters. Based thereon, the Court GRANTS Plaintiffs' motion to certify the proposed "Vacation/Uniform/Paycheck/Wages/ Breach of Contract Class" and  proposed "Off-the-Clock Subclass."

7.      Claim under Cal. Bus. & Prof. Code § 17200

Plaintiffs also request that the Court grant class certification with regard to their claims under Cal .Bus. & Prof. Code § 17200. Plaintiffs do not request the Court certify a separate class; instead, Plaintiffs' claims under § 17200 are derivative of their alleged state wage and hour claims. To the extent Plaintiffs' § 17200 claims are based upon the same underlying claims which are otherwise appropriate for class treatment, the Court GRANTS Plaintiffs' motion to certify such claims for class-wide treatment.

### *Plaintiffs' Motion for Collective Action Certification*

By separate motion, Plaintiffs move the Court for collective action certification under the FLSA. Plaintiffs' FLSA claims are premised upon GAT's failure to pay minimum and overtime wages. Plaintiffs argue that as a result of GAT requiring employees to pay deposits for company property, failing to pay for commuting time, and failing to provide an uninterrupted meal period, ramp agents were not paid a proper hourly wage. Plaintiffs also assert that application of GAT's policies resulted in skycaps being paid less than minimum wage. Plaintiffs thus seek to certify the following class under 29 U.S.C. § 216(b):

> All current and former employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, Burbank International Airport, and Sacramento International Airport in California for the period July 2, 2005 to the Present ("FLSA Class").

A collective action may be maintained pursuant to 29 U.S.C. § 216(b) where the claimants are "similarly situated." Courts, generally utilize a two-step approach to determine whether

plaintiffs are similarly situated. Leuthold, 224 F.R.D. at 467. At the initial stage, the court gives notice of the action to the potential class to make a determination whether their claims are "similar." Id. Any employee wishing to participate in the collective action must consent in writing and file that consent. 29 U.S.C. § 216(b). The standard at the early point in the proceedings is fairly lenient and "typically results in conditional class certification." Id.

Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. At this final stage, the court must make a factual determination regarding the propriety and scope of the class after considering the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." Id.

In this case, upon the parties' joint motion, on January 14, 2010 Magistrate Judge Stormes entered an order that putative FLSA Plaintiffs be given notice of the action and the opportunity to join. A total of 1,170 notices were mailed to FLSA potential class members, and a total of 213 consent to sue forms were returned. Of those forms, 206 were deemed valid and timely and were filed with the Court. Although the FLSA class was never conditionally certified, both parties ask the Court to perform the second-step inquiry as to the propriety and scope of the FLSA class.

1. Factual and employment settings of individual Plaintiffs

As Plaintiffs point out, the putative FLSA class members were all employed by GAT at airports in California, and were subject to GAT's common policies with regard to paying deposits for company property, parking off site and riding an employee shuttle to the work area, and the ability to take full uninterrupted meal periods. For the reasons explained above, the Court concludes Plaintiffs' meal period claims cannot form the basis of an FLSA collective action. However, to the extent application of GAT's other policies resulted in Plaintiffs' rate of pay falling below minimum wage or the non-payment of overtime, Plaintiffs have demonstrated they are similarly situated to the opt-in FLSA class members.

Defendants argue the Plaintiffs cannot represent skycaps in an FLSA collective action because none of the named Plaintiffs are skycaps. As the Court discussed above with regard to the

1  Rule 23 class certification, however, skycaps are subject to the same uniform deposit and off-site
2  parking policies as the named Plaintiffs. Therefore, the Court finds the Plaintiffs can represent the
3  interests of skycaps in an FLSA collective action.

4  2.      Defenses

5  With regard to the various defenses available to the individual plaintiffs, Defendants argue
6  only that the Court cannot collectively adjudicate Plaintiffs' claims based upon missed meal
7  breaks. The Court has already concluded the meal period claims are inappropriate for collective
8  action treatment, and the Plaintiffs' defenses to the remaining claims underlying the FLSA cause
9  of action are not so disparate as to preclude collective adjudication.

10 3.      Fairness and Procedural Concerns

11 Because the FLSA Collective Action proceeds only as to those Plaintiffs who have
12 affirmatively opted-in, in this case 206 Plaintiffs, this portion of the action would be considerably
13 more manageable than those claims certified for class treatment under Rule 23. Defendants argue
14 the proposed class is overbroad because it includes employees who did not actually work in excess
15 of 40 hours. However, the only way to determine whether the Plaintiffs were entitled to additional
16 wages is to resolve the underlying claims regarding the uniform policy and meal periods.

17 Defendants also argue the proposed class includes employees whose claims are barred by
18 the statute of limitations. The statute of limitations under the FLSA is three years, and the
19 collective action notice was not sent to putative members until February 11, 2010. Plaintiffs do
20 not dispute there may be employees included within the definition whose claims are time-barred,
21 and do not explain why the class definition should include employees prior to February 11, 2007.
22 Therefore, the Court will limit the definition of the FLSA Class to current and former employees
23 for the period February 11, 2007 to the present.

24 ///
25 ///
26 ///
27 ///
28 ///

## *Conclusion*

For the reasons set forth herein, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motions for class certification and for collective action certification. The Court certifies the following class and subclass under Rule 23 of the Federal Rules of Civil Procedure:

> All current and former non-exempt employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, Burbank International Airport and Sacramento International Airport in California for the period July 2, 2004 to the present ("Vacation/Uniform/Paycheck/Wages/ Breach of Contract Class").

> All current and former non-exempt employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, and Sacramento International Airport in California for the period July 2, 2004 to the present ("Off-The-Clock Subclass").

The Court further certifies the following class for FLSA collective action:

> All current and former non-exempt employees employed by G.A.T. Airline Ground Support, Inc. at the San Diego International Airport, Orange County John Wayne Airport, Burbank International Airport, and Sacramento International Airport in California for the period February 11, 2007 to the Present ("FLSA Class").

**IT IS SO ORDERED**.

**DATED: September 13, 2010**

*[signature: Irma E. Gonzalez]*
**IRMA E. GONZALEZ, Chief Judge
United States District Court**